Bertrand C. Sellier, Esq.
C. Zachary Rosenberg, Esq.
ROTTENBERG LIPMAN RICH, P.C.
230 Park Avenue, 18th Floor
New York, New York 10169
(212) 661-3080
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
JORDAN FERSEL, M.D.,

           :   Civil Action No. 1:18-cv-2448

       Plaintiff,

           :

 - against -

           :   **COMPLAINT**

PARAMOUNT MEDICAL SERVICES, P.C.,

           :   **(Jury Trial Demanded)**

       Defendant.

           :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

   Plaintiff, Jordan Fersel, M.D., by and through his undersigned attorneys, for his complaint alleges as follows:

## PARTIES

   1. Plaintiff Jordan Fersel, M.D., ("Dr. Fersel") is a physician duly licensed to practice medicine in the State of New York. Dr. Fersel is a citizen and resident of the State of New Jersey.

   2. Defendant Paramount Medical Services, P.C. ("Paramount") is a New York professional corporation with its principal place of business at 420 Jericho Turnpike # 212, Jericho, New York 11753.

## JURISDICTION

3. Jurisdiction is proper in this Court under 28 U.S.C. §1332(a)(i) because this matter in controversy exceeds the sum of $75,000 exclusive of interest and costs, and is between citizens of different States.

## VENUE

4. Venue is proper in this district under 28 U.S.C. §1391(b)(i) because the defendant's principal place of business is in Nassau County.

## FACTUAL ALLEGATIONS

5. Dr. Fersel, who is a pain management specialist, and Paramount are parties to an Agreement of Engagement dated as of December 12, 2016 (the "Agreement"). The Agreement was signed by Jonathon Landow, M.D. ("Dr. Landow") on behalf of Paramount as its President. A copy of the Agreement is attached hereto as Exhibit A.

6. As set forth in the Agreement, Paramount "is engaged in the practice of medicine in the New York Metropolitan area at multiple practice locations" and Paramount "desire[d] to employ [Dr. Fersel] to render medical services" on Paramount's behalf.

7. Pursuant to Schedule "A" of the Agreement, Paramount was required to pay Dr. Fersel 40% of all of the revenue received by Paramount for his services, with payment due on or before the tenth day of the month in which revenue was received by Paramount. Dr. Fersel was at all times treated as an employee of Paramount, and as such his income was reported on a form W-2.

8. The term of the Agreement was two years, running through December 12, 2018, unless otherwise terminated.

9. Paramount has business relationships with various chiropractors in Brooklyn, Queens and the Bronx. Pursuant to the Agreement, Paramount would schedule Dr. Fersel to work in various chiropractors' offices to provide pain management services, including evaluation and treatment plans, injections and physical therapy as appropriate. The charge for these pain management services was generally about $350-400, of which Dr. Fersel would receive 40%.

10. Paramount was responsible for processing invoices sent to the patients' insurance companies for Dr. Fersel's work. Payment from the insurers was generally received about two-three months after the invoices were submitted.

11. The insurance companies would sometime raise questions about certain invoices. Those questions are submitted to arbitration, which is handled by counsel for Paramount. In matters subject to arbitration, Dr. Fersel's payments would be delayed until the arbitration was resolved. Dr. Fersel is entitled to 40% of the amounts attributable to his services received in such arbitrations.

12. Dr. Landow was interested in having Dr. Fersel begin treating patients with a relatively new treatment known as Platelet Rich Plasma ("PRP"). The insurance companies have asserted that PRP is an experimental treatment, and to date have refused to cover PRP.

13. In June of 2017, Dr. Fersel began to treat a few patients with PRP. According to Dr. Landow, the anticipated insurance reimbursement for each PRP treatment would be $2,500, of which Dr. Fersel's 40% share would be $1,000. The PRP reimbursement claims are now the subject of arbitration.

14. During the course of the Agreement, Dr. Fersel saw about 75-80 patients per week. After Dr. Fersel began using PRP, only about 2-3 patients a week were suitable for that treatment, and the remainder received standard pain management treatment.

15. On January 21, 2018, Dr. Landow sent Dr. Fersel a proposal to revise the compensation formula in the Agreement. The next day Dr. Fersel replied in an email and explained why the proposed revision was unacceptable to him.

16. On January 23, 2018, Dr. Landow sent an email to Dr. Fersel stating that if no new agreement was reached "we will require 60 days written notice". That same day Dr. Fersel replied by email and provided "official written notice of my termination in sixty days".

17. Article 8.01 of the Agreement provides for termination by either party without cause on 60 days' written notice. Article 8.03 provides that Dr. Fersel could terminate the Agreement for cause based on a material breach of the Agreement which remained uncured after 30 days' written notice.

18. On February 1, 2018, Dr. Landow informed Dr. Fersel that he was implementing a new schedule that would limit Dr. Fersel to administering PRP treatments, while "the other provider focuses on basic pain management." Dr. Landow added that because of the delay in insurance reimbursement, Paramount would give Dr. Fersel the option of receiving $150 for each PRP treatment, in which case Dr. Fersel would forfeit any claim to any future insurance reimbursement for those treatments.

19. Upon information and belief, Paramount made this change under the guise of "scheduling" to retaliate against Dr. Fersel for refusing to accept the proposed revision of the Agreement and exercising his right to terminate.

20. Dr. Fersel objected in writing on February 1 and February 4 to Dr. Landow's unilateral "scheduling change". The implementation of this change would obviously be extremely damaging to Dr. Fersel by depriving him of the ability to perform the pain management procedures that were the most significant part of his practice.

21. Despite his misgivings, on February 6, 2018, Dr. Fersel reported to the location scheduled by Dr. Landow. Dr. Fersel spent the entire working day as instructed, but did not see a single patient who was suitable for PRP treatment. As a result, Dr. Fersel did not receive any compensation for seven hours of his time.

22. Again on February 8, 2018, Dr. Fersel reported to the location scheduled by Dr. Landow. Once again, he did not see any patients who were suitable for PRP treatment, and therefore he spent his working hours at that location without any compensation.

23. Dr. Landow claimed that Paramount had the right to effectively require Dr. Fersel to spend his working hours for no compensation based on Article 2.01 of the Agreement, which provides that Dr. Fersel agreed to "devote sufficient professional time…and best efforts to the Company's practice, in accordance with a task-based schedule…" As Dr. Landow asserted in a February 6, 2018 email, the Agreement "provide[s] clear guidance on your obligation to fulfill reasonable clinical assignments which are provided to you on behalf of the company".

24. Paramount's imposition of a schedule restricting Dr. Fersel to PRP treatments and barring him from providing pain management services, and its claim that Dr. Fersel could be required to spend his working hours for little or no compensation, violated the covenant of good faith and fair dealing, and materially breached the Agreement.

25. In light of the position repeatedly taken by Dr. Landow, and his explicit refusal to allow Dr. Fersel to perform pain management procedures, Dr. Fersel had no further obligation to continue to report to locations assigned by Paramount.

26. Upon information and belief, the total compensation due to Dr. Fersel for work he performed for Paramount and for which he has not yet been paid is approximately $150,000. Dr.

Fersel has repeatedly requested the information he needs to calculate the exact amount due, but Paramount has refused to provide that information.

27. Article X of the Agreement contains non-competition, non-circumvention, and non-solicitation provisions which purport to continue after termination (the "Non-Compete Provisions").

28. The Non-Compete Provisions are unenforceable both because Paramount breached the Agreement and because those provisions violate public policy.

## FIRST CAUSE OF ACTION
(Breach of Contract)

29. Plaintiff repeats and re-alleges the allegations set forth in Paragraphs 1 through 28 as if fully set forth herein.

30. The Agreement is a valid and binding contract.

29. Pursuant to the Agreement, Paramount owes Dr. Fersel an amount believed to be approximately $150,000.

30. Paramount has failed to pay Dr. Fersel amounts he is owed for work performed, and thus is in material breach of its obligations pursuant to the Agreement.

31. By virtue of the foregoing, Dr. Fersel has suffered damages in an amount to be proven at trial, but believed to be approximately $150,000, plus interest, costs, and attorneys' fees.

## SECOND CAUSE OF ACTION
(Quantum Meruit)

32. Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 31 as if fully set forth herein.

33. At the request of Paramount, Dr. Fersel performed certain medical services.

6

34. Paramount knew that Dr. Fersel was performing the requested services and accepted such services. Paramount also knew that Dr. Fersel expected to be paid for this work.

35. Paramount accepted and received the benefits of the services rendered by Dr. Fersel.

36. Accordingly, Paramount is liable to Dr. Fersel in quantum meruit in an amount to be determined at trial, but believed to be approximately $150, 000, plus interest, costs, and attorneys' fees.

THIRD CAUSE OF ACTION
(Unjust Enrichment)

37. Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 36 as if fully set forth herein.

38. Dr. Fersel performed services on behalf of and for the benefit of Paramount, and at Paramount's specific request.

39. Paramount accepted Dr. Fersel's services.

40. Paramount has reaped the full benefit of Dr. Fersel's services, but has failed and refused to pay costs of such services, despite due demand.

41. Paramount is unjustly enriched by accepting and retaining the benefits of Dr. Fersel's services, but failing to pay the costs, and Paramount is not entitled to retain such benefits.

42. As a result Paramount is indebted to Dr. Fersel in an amount to be proven at trial, but believed to be approximately $150,000 plus interest, costs, and attorneys' fees.

## FOURTH CAUSE OF ACTION
(Violation of New York Labor Law Article 6)

43. Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 42 as if fully set forth herein.

44. Dr. Fersel was an "employee" of Paramount as that term is defined in Section 190 of the New York Labor Law.

45. Paramount was an "employer" as that term is defined in Section 190 of the New York Labor Law.

46. Dr. Fersel was entitled to wages for services in 2017 and 2018 which he has not received from Paramount.

47. By willfully and without justification, deducting and failing to pay wages to which Dr. Fersel was entitled Paramount violated New York Labor Law §193.

48. Pursuant to New York Labor Law §198 (1-a), Paramount's willful breach has damaged Dr. Fersel in an amount to be determined at trial, but in no event less than approximately $150,000, together with liquidated damages equal to 100% of that amount, plus attorneys' fees and pre-judgment interest.

## FIFTH CAUSE OF ACTION
(Declaratory Judgment)

49. Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 48 as if fully set forth herein.

50. Pursuant to the Agreement, Paramount owes Dr. Fersel an amount believed to be approximately $150,000.

51. Paramount has failed to pay Dr. Fersel amounts he is owed for work performed, and thus is in material breach of its obligations pursuant to the Agreement.

52. In light of Paramount's material breach of the Agreement, the Non-Compete Provisions are unenforceable.

53. Alternatively, the Non-Compete Provisions of the Agreement are void as against public policy.

54. Dr. Fersel, therefore, is entitled to a judgment declaring that the Non-Compete Provisions of the Agreement are unenforceable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Dr. Jordan Fersel respectfully requests judgment in his favor and against Defendant Paramount as follows:

1. awarding Dr. Fersel an award of damages in an amount to be determined at trial, but believed to be approximately $150,000 plus interest on the First Cause of Action;

2. awarding Dr. Fersel an award of damages in an amount to be determined at trial, but believed to be approximately $150,000 plus interest on the Second Cause of Action;

3. awarding Dr. Fersel an award of damages in an amount to be determined at trial, but believed to be approximately $150,000 plus interest on the Third Cause of Action;

4. awarding Dr. Fersel an award of damages in an amount to be determined at trial, but believed to be approximately $150,000 plus interest on the Fourth Cause of Action;

5. awarding Dr. Fersel liquidated damages in an amount to be determined at trial, but believed to be approximately $150,000 plus interest on the Fourth Cause of Action, pursuant to the Labor Law;

6. awarding Dr. Fersel the expenses that he incurred in bringing this action, including attorneys' fees, costs, and disbursements;

7. awarding Dr. Fersel a judgment on the Fifth Cause of Action declaring that the Non-Compete Provisions of the Agreement are unenforceable;

8. awarding Dr. Fersel pre-judgment interest and post-judgment interest; and

9. granting Dr. Fersel such order and further relief as the Court may deem just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the Complaint.

Dated: New York, New York
April 25, 2018

ROTTENBERG LIPMAN RICH, P.C.

By: _____
Bertrand C. Sellier
C. Zachary Rosenberg
The Helmsley Building
230 Park Avenue, 18th Floor
New York, New York 10169
Tel: (212) 661-3080

Attorneys for Plaintiff