UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
JORDAN FERSEL, M.D.,

                            Plaintiff,

              -against-

PARAMOUNT MEDICAL SERVICES, P.C.,

                           Defendant.
-------------------------------------------------------------X

**Docket No.:**
**18-CV-2448 (RRM) (CLP)**

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF DEFENDANT'S CROSS MOTION TO AMEND THEIR ANSWER AND FOR SUMMARY JUDGMENT**

**HARFENIST KRAUT & PERLSTEIN, LLP**
*Attorneys for Defendant*
3000 Marcus Avenue, Suite 2E1
Lake Success, New York 11042
P. (516) 355-9600
F. (516) 355-9601

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ i

PRELIMINARY STATEMENT ...................................................................................... 1

STATEMENT OF FACTS ............................................................................................... 2

    A.    Paramount's Business and Services ................................................................. 2

    B.    Paramount's Agreement with Fersel ............................................................... 2

            1.    Fersel's Duties and Responsibilities ................................................. 2
            2.    Fersel's Compensation Under the Agreement ................................... 3
            3.    Billing and Collection ...................................................................... 3
            4.    Confidentiality and Non-Compete Provisions ................................. 3
            5.    Termination of the Agreement .......................................................... 4

    C.    Fersel Begins Treating Patients with PRP on Behalf of Paramount ................ 4

    D.    Conflict Over the Renewal of the Agreement .................................................. 5

    E.    Fersel's Breach of Article X of the Agreement ............................................... 6

    F.    Fersel is not Owed Revenue from Arbitrations Awarded After he
          Left Paramount ................................................................................................ 7

    G.    Fersel's Damage Calculations are Inaccurate ................................................. 8

    H.    Paramount was not Responsible for Fersel's COBRA Payments ..................... 8

ARGUMENT ................................................................................................................... 8

POINT I.       SUMMARY JUDGMENT STANDARD ....................................................... 8

POINT II.      FERSEL'S CLAIMS FOR QUANTUM MERUIT AND UNJUST
                 ENRICHMENT MUST BE DISMISSED SINCE HE ASSERTS THE
                 EXISTENCE OF AN ENFORCEABLE CONTRACT ................................. 9

POINT III.     THE CONTRACT DOES NOT CALL FOR FERSEL TO RECEIVE
                 PAYMENTS RECEIVED BY PARAMOUNT AFTER THE
                 TERMINATION OF HIS EMPLOYMENT ................................................ 10

POINT IV.     FERSEL IS NOT ENTITLED TO DAMAGES UNDER THE FAITHLESS
                 SERVANT DOCTRINE ............................................................................. 13

　　　　1.　　Faithless Servant Doctrine as a Defense on Summary Judgment ...............14

　　　　2.　　The Court Should Allow Paramount to Amend its Answer to Add a
　　　　　　　Counterclaim Under the Faithless Servant Doctrine ...................................16

POINT V.　　　QUESTIONS OF FACT EXIST AS TO FERSEL'S DAMAGES ......................18

POINT VI.　　　SUMMARY JUDGMENT MUST BE DENIED SINCE ANY DAMAGES
　　　　　　　　FERSEL IS ENTITLED WOULD BE OFFSET BY PARAMOUNT'S
　　　　　　　　COUNTERCLAIMS............................................................................................19

POINT VII.　　　PARAMOUNT DID NOT ILLEGALLY DEDUCT FERSEL'S WAGES ..........19

POINT VIII.　　THE NON-COMPETE PROVISIONS OF THE AGREEMENT ARE
　　　　　　　　ENFORCEABLE .................................................................................................19

　　　　A.　　Fersel Left Paramount on his Own Volition ................................................20

　　　　B.　　The Covenants not to Compete and Non-Soliciatation are
　　　　　　　Enforceable because they Run for a Short Time-Period and are
　　　　　　　Limited in Radius .........................................................................................21

　　　　C.　　Paramount's Legitimate Interest in the Restrictive Covenant ...................23

　　　　D.　　Fersel Breached the Covenants Not to Compete Before his Employment
　　　　　　　Terminated with Paramount .......................................................................24

POINT IX.　　　PARAMOUNT IS NOT RESPONSIBLE FOR FERSEL'S COBRA CLAIMS ..25

CONCLUSION.....................................................................................................................26

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.*
477 U.S. 242, 248 (1986) ........................................................................................................ 9

*Apple Mortgage Corp. v. Barenblatt*
162 F.Supp.3d 270, 289 (S.D.N.Y. 2016) .......................................................................... 12

*Awwad v. Capital Region Otolaryngology Head & Neck Group, LLP*
18 Misc.3d 1111(A), 856 N.Y.S.2d 22, at *1-*3 (Sup. Ct. Albany Cty. 2007) ................ *passim*

*BDO Seidman v. Hirschberg*
93 N.Y.2d 382, 388-89, 712 N.E.2d 1220, 690 N.Y.S.2d 854 (1999) .............................. *passim*

*Bravia Capital Partners, Inc. v. Fike*
2011 WL 6081345, at *3 (S.D.N.Y. Dec. 6, 2011) ............................................................. 12

*Cambridge Valley Machining, Inc. v. Hudson MFG LLC*
2020 WL 6058787 (N.D.N.Y. 2020) ................................................................................... 19

*Celotex Corp. v. Catrett*
477 U.S. 317, 323 (1986) ........................................................................................................ 9

*Crye Precision LLC v. Bennettsville Printing*
755 F. App'x 34, 36 (2d Cir. 2018) ...................................................................................... 21

*D'Amico v. City of N.Y.*
132 F.3d 145, 149 (2d Cir. 1998) ........................................................................................... 9

*Donnelly v. Greenburgh Central School District No. 7*
691 F.3d 134, 141 (2d Cir. 2012) ........................................................................................... 9

*Eunhasu Corp. v. Norguard Ins. Co.*
2020 WL 5513159 (S.D.N.Y Sept. 14, 2020) ..................................................................... 13

*Feiger v. Iral Jewelry, Ltd.*
41 N.Y.2d 928, 928, 394 N.Y.S.2d 626, 363 N.E.2d 350 (1977) ....................................... 14

*First Data Merch. Servs. Corp. v. Oxford Mgmt. Servs., Inc.*, No. 07-CV-2083-RRM-ETB, 2011
WL 1260223, at *3 (E.D.N.Y. Mar. 30, 2011) .............................................................. 10, 11

*Gelder Medical Group v. Webber*
41 N.Y.2d 680, 685, 363 N.E.2d 573, 394 N.Y.S.2d 867 (1977) ....................................... 22

*Global Funding Group, LLC v. 133 Community Road, Ltd.*
251 F.Supp.3d 527, 533 (E.D.N.Y. 2017) ........................................................................... 10

*Hirsch v. Qingdao Orien Com. Equip. Co.*
No. 12-CV-952 RRM, 2015 WL 1014352, at *8 (E.D.N.Y. Mar. 6, 2015) ........................ 10

*Holmes v. Grubman*
568 F.3d 329, 334 (2d Cir. 2009) ......................................................................................... 16

*In Re Basic Food Group*, LLC
2016 WL 3677673 * 17, fn. 6 (Bk. Ct. S.D.N.Y 2016) ...................................................... 13

*In re Hirschhorn*
156 B.R. 379, 386 (Bk. E.D.N.Y. 1993) .............................................................................. 22

*Inflight Newspapers, Inc. v. Magazines In-Flight, LLC*
990 F.Supp. 119, 135 (E.D.N.Y. 1997) ............................................................................... 22

*Int'l Multifoods Corp. v. Commercial Union Ins. Co*
   309 F.3d 76, 83 (2d Cir.2002) ........................................................ 11

*Karpinski v. Ingrasci*
   28 N.Y.2d 45, 50, 268 N.E.2d 751, 320 N.Y.S.2d 751 (1971) ........................... 22

*Khaldei v. Kaspiev*
   135 F.Supp.3d 70, 84 (S.D.N.Y. 2015) ........................................... 14, 15

*Linder v. Innovative Commercial Systems LLC*
   41 Misc.3d 1214(A), at *3, 981 N.Y.S.2d 636 (Sup. Ct. N.Y. Cnty. 2013) ........... 12

*Mackie v. LaSalle Indus.*
   92 A.D. 2d 821, 822, (1st Dept. 1983) ............................................ 12

*Merrill Lynch & Co. v. Allegheny Energy, Inc.*
   2005 WL 832050 (S.D.N.Y. 2005); ................................................ 19

*Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*
   418 F.3d 168 (2d Cir. 2005) ....................................................... 9

*Monahan v. N.Y. City Dept. of Corrections*
   214 F.3d 275, 283 (2d. Cir. 2000) ................................................ 17

*Morris v. Schroder Capital Management Intern.*
   481 F.3d 86, 88 (2d Cir. 2007) ................................................... 20

*Pachter v. Bernard Hodes Group,Inc.*
   10. N.Y.3d 609, 613 (2008) ....................................................... 12

*Perfect Pearl Co., Inc. v. Majestic Pearl & Stone, Inc.*
   889 F.Supp.2d 453, 457 (S.D.N.Y. 2012) .......................................... 16

*Phansalkar v. Andersen Weinroth & Co., L.P.*
   344 F.3d 184, 200 (2d Cir. 2003) ................................................. 14

*Postlewaite v. McGraw–Hill, Inc.*
   411 F.3d 63, 67 (2d Cir.2005) .................................................... 10

*Rambam v. Oxford Health Plans, Inc.*
   306 A.D.2d 467, 468, 7612 N.Y.S.2d 320, 320 (2d Dept. 2003) ..................... 25

*Redd v. N.Y. Division of Parole*
   678 F.3d 166, 173–74 (2d Cir. 2012) ............................................... 9

*Rockland Exposition, Inc. v. Alliance of Automotive Service Providers of N.J.*
   894 F.Supp.2d 288 (S.D.N.Y. 2012) .............................................. 19

*Scott v. Chipotle Mexican Grill, Inc.*
   300 F.R.D. 193, 197 (S.D.N.Y. 2014) ............................................. 16

*Stanley v. Skowron*
   989 F.Supp.2d 356, 359 (S.D.N.Y. 2013) ....................................... 14, 15

*Western Elec. Co. v. Brenner*
   41 N.Y.2d 291, 295, 392 N.Y.S.2d 409, 360 N.E.2d 1091 (1977) ................... 14

**Statutes**

Fed. R. Civ. P. 56(a) ................................................................ 9

Fed. R. Civ. Proc. 15 .............................................................. 16

N.Y. Ins. § 3221(m) ............................................................... 25

## PRELIMINARY STATEMENT

Incorrectly applying the compensation and restrictive covenant terms of his employment agreement ("Agreement"), the Plaintiff Jordan Fersel, M.D. ("Fersel") seeks summary judgment under FRCP 56 claiming that the Defendant Paramount Medical Services, P.C. ("Paramount") owes him money under the revenue share agreement and dismissing Paramount's counterclaim alleging he is not bound by the two-year restrictive and three-year non-solicitation provisions of the Agreement. Both of his positions are incorrect based upon the Agreement when viewed under New York law which applies to this diversity jurisdiction case.

Initially, the unambiguous terms of the Agreement show Fersel's compensation was contingent upon his participation in finalizing claims for services he performed for patients billed to no-fault insurance carriers through arbitration which were due to Fersel when received by Paramount.

As Fersel's employment concluded before the funds were received by Paramount through arbitration his claims for fees received post-employment must be dismissed.

In opposing Fersel's motion, Paramount learned that Fersel was conducting his own practice at Paramount's referral sources' locations with patients referred by them and while still employed by Paramount. Accordingly, under the faithless servant doctrine Fersel's claims for compensation must fail.

While the faithless servant doctrine was not plead as an affirmative defense, the Court should consider it as it is peculiarly within Fersel's knowledge. To the extent necessary, Paramount has cross moved to amend its answer to assert the defense.

And, Fersel's damages calculations are incorrect as he includes the entirety of the arbitration awards without deducting filing and attorneys' fees.

Finally, Fersel's attempt to void his non-solicitation and non-compete fails since 1) questions of fact exist whether Fersel chose to leave Paramount's employ; and 2) the covenants prohibiting Fersel from having a relationship with Paramount's referral sources was limited to the reasonable periods of two years and only to Paramount's referral sources and use of confidential information related to the referral sources was limited to three years.

Accordingly, Fersel's application for summary judgment should be denied and Paramount's application to dismiss the Complaint should be granted.

## STATEMENT OF FACTS

### A.     Paramount's Business and Services

Paramount was formed in 2011 to provide medical services and treatments to patients with no-fault insurance. (Landow Dec. ¶ 3). Paramount provides pain management treatment to patients including medicated injections, such as epidurals. (Landow Dec. ¶ 5). In approximately 2017, Paramount offered Platelet Rich Plasma ("PRP") treatment. (Landow Dec. ¶ 6). PRP treatment involves the use of stem cells to promote healing in patients. (Landow Dec. ¶ 6).

### B.     Paramount's Agreement with Fersel

On December 12, 2016, Paramount and Jordan Fersel, M.D. ("Fersel" or "Plaintiff") entered an Agreement of Engagement ("Agreement") for a one-year term. (Def. Ex. 1; Landow Dec. ¶ 7).

#### 1.     Fersel's Duties and Responsibilities

Under the Agreement, Fersel operated under a task-based schedule. (Def. Ex. 1; Landow Dec. ¶¶ 8-10). This meant Fersel's schedule was based on treating patients. (Landow Dec. ¶ 10). Fersel understood that he was to use his best judgment in treating patient. (Landow Dec. ¶ 10).

When Dr. Landow, on behalf of Paramount, and Fersel signed the Agreement, Fersel had no objections to the task-based schedule. (Landow Dec. ¶ 11).

## 2. Fersel's Compensation Under the Agreement

Fersel's compensation was guided by Article IV of the Agreement, entitled Compensation, and Schedule "A," annexed to the Agreement. (Def. Ex. 1; Landow Dec. ¶¶ 12-13).

Under Schedule "A" Fersel was entitled to 40% of the revenues received by Paramount for his services while he was employed by Paramount. (Landow Dec. ¶ 14). Once Fersel's employment with Paramount ceased, so did his revenue shares. (Landow Dec. ¶ 14). For example, if Paramount received revenue for Fersel's work two (2) years after Fersel left Paramount, Fersel would not be entitled to that money as he no longer worked with Paramount when the revenue was received. (Landow Dec. ¶ 14). Nor did he participate in the arbitration based collection efforts.

## 3. Billing and Collection

Under Article VI of the Agreement, the physician, Fersel, agreed that when revenue was collected from his services, some of the revenue had to be paid to any company Paramount hired to effectuate the billing and collections, such as a law firm. (Landow Dec. ¶ 17; Def. Ex. 1). This included arbitrations, which are often necessary to collect the no-fault insurance fees. (Landow Dec. ¶ 17).

## 4. Confidentiality and Non-Compete Provisions

The Agreement also contained clauses for both confidentiality and to ensure the physician would not compete with Paramount for a restricted amount of time within a restricted locale. (Landow Dec. ¶ 18).

Article VII, entitled Confidentiality, and specifically Paragraph 7.02 restricted Fersel from disclosing confidential information that belonged to Paramount or using such information to his

own benefit. (Landow Dec. ¶ 19; Def. Ex. 1). The referral sources mentioned in paragraph 7.02 included the physical practice locations Fersel and other Paramount-employed physicians worked. (Landow Dec. ¶ 21). Under this provision, Fersel, or any other Paramount physician, could not utilize the referral sources to compete with Paramount. (Landow Dec. ¶ 22).

Article X of the Agreement contained a Restrictive Covenant. (Landow Dec. ¶ 23). Paragraph 10.01 prohibited Fersel from seeking a position with Paramount's referral sources and from working with the facilities where Paramount treated patients. (Landow Dec. ¶ 25; Def. Ex. 1).

Paragraph 10.03 allows Paramount to seek damages from Fersel if he violates Article X. (Def. Ex. 1; Landow Dec. ¶ 26).

Under paragraph 10.04 Fersel could not seek employment, or a means of practicing medicine, with any facility with which Paramount practiced out of or had a relationship with for three years after termination of the Agreement. Fersel could practice anywhere else if it was not with these facilities. (Landow Dec. ¶ 28; Def. Ex. 1).

**5.      Termination of the Agreement**

Article VIII provided for the termination of the Agreement. (Landow Dec. ¶ 29). Under paragraph 8.01, the Agreement could be terminated by either party without cause given 60 days' prior written notice. (Landow Dec. ¶ 30; Def. Ex. 1).

**C.      Fersel Begins Treating Patients with PRP on Behalf of Paramount**

Fersel treated Paramount's patients in 2017. (Landow Dec. ¶ 31). Paramount and Fersel were interested in having Fersel treat patients with PRP. (Landow Dec. ¶ 32).

The decision to have Fersel treat PRP patients was mutual. (Landow Dec. ¶ 35). Although PRP treatments are frequently the subject of arbitrations, they are not considered experimental

treatments by insurance companies as they are a normal part of no-fault fee scheduling. (Landow Dec. ¶ 38).

Most of the time, insurance companies pay undisputed bills within two or three months of receipt. (Landow Dec. ¶ 39). However, if insurance companies refuse to pay because they feel the treatment was unnecessary, or for any other reason, Paramount has the option to arbitrate those claims. (Landow Dec. ¶ 39). If the arbitration returns an award in Paramount's favor, those rewards can take over two years to be paid to Paramount. (Landow Dec. ¶ 39).

Despite the uncertainty of payment, Fersel still wanted to treat patients with PRP. (Landow Dec. ¶ 40). Fersel's treatment of patients with PRP never seemed to be an issue until he and Dr. Landow had a dispute over the renewal of his Agreement with Paramount. (Landow Dec. ¶ 41).

## D.    Conflict Over Renewal of the Agreement

Beginning in about December 2017, Fersel and Dr. Landow entered discussions about possible modification and extension to the Agreement. (Landow Dec. ¶ 42). On December 27, 2017, Fersel wrote Dr. Landow an email indicating he wanted to change his contract for 2018, specifically regarding income. (Landow Dec. ¶43). Besides other benefits, Fersel wanted Paramount to increase his income stream from the 40% provided for in Schedule "A" to 50%. (Def. Ex. 3; Landow Dec. ¶ 43).

Dr. Landow sent Fersel a proposed Amended Agreement on behalf of Paramount on January 4, 2018, which provided him with additional income. (Landow Dec. ¶ 45; Def. Ex. 3). Fersel was not pleased with the proposed Amended Agreement. (Landow Dec. ¶ 48).

Fersel and Dr. Landow continued to negotiate as he felt he was not being adequately compensated. (Landow Dec. ¶ 49). Because of their further discussions, Dr. Landow sent Fersel a

remuneration proposal on January 21, 2018, which provided for bonus pay. (Landow Dec. ¶¶50-51; Def. Ex. 4).

Fersel rejected the remuneration proposal on January 22, 2018. (Landow Dec. ¶ 56; Def. Ex. 5). Dr. Landow informed Fersel on January 23, 2018 that if he felt they could not agree, under paragraph 8.8.01, he would have to provide Paramount with 60 days' written notice of his termination. (Landow Dec. ¶ 57; Def. Ex. 5).

Fersel responded saying, "Very good Jonathan, as you wish. You have your official written notice of my termination in sixty days." (Def. Ex. 5; Landow Dec. ¶ 59). Fersel claims Dr. Landow forced him to resign from Paramount, but that was not the case – Fersel's resignation was his decision. (Landow Dec. ¶ 59).

Before Fersel's employment with Paramount was terminated, Dr. Landow learned he retaliated against him and Paramount. (Landow Dec. ¶ 60).

### E.  Fersel's Breach of Article X of the Agreement

Around when Fersel gave Dr. Landow his 60 days' notice under the Agreement, Dr. Landow discovered he was engaging in conversations with Paramount's referral sources, including Touch Stone Chiropractic, P.C. ("Touch Stone"), Shashek Chiropractic, P.C. ("Shashek"), and Van Siclen Chiropractic, P.C. ("Van Siclen") (collectively the "Referral Sources") to displace Paramount with a practice of his own. (Landow Dec. ¶ 61).

Specifically, Dr. Landow discovered Fersel had conversations and asked the Referral Sources to take over as their referral for pain management at their facilities to displace Paramount. (Landow Dec. ¶ 62). Paramount had written agreements with some of those Referral Sources, which prohibited them from allowing an employee of Paramount, such as Fersel, to operate at their locations. (Landow Dec. ¶ 63; Ex. A).

Touch Stone, Shashek, and Van Siclen would refer patients who they believed needed pain management care to Paramount. (Landow Dec. ¶ 64). Paramount then sent doctors to their facilities to perform whatever pain management was necessary on those patients. (Landow Dec. ¶ 64).

Even though Paramount operated at certain facilities owned by the Referral Sources, it always could travel to any facility of theirs to provide pain management treatment making the referral sources were not location specific. (Landow Dec. ¶ 65).

Fersel agreed with the Referral Sources to supplant Paramount at these facilities. (Landow Dec. ¶ 66). The Referral Sources admitted this to Dr. Landow. (Landow Dec. ¶ 66).

Even worse, Dr. Landow recently discovered that Fersel was working for the Referral Sources under an entity he created called Center for Neurorestorative Medicine ("CNM") while he was employed by Paramount. (Landow Dec. ¶ 69; Ex. B; Ex. C; Ex. D).

Landow came to learn that Fersel treated patients referred by the Referral Sources covered by the restrictive covenant before he left Paramount's employment at facilities where Paramount was operating. (Landow Dec. ¶ 70).

**F.    Fersel is not Owed Revenue from Arbitrations Awarded After he Left Paramount**

Schedule "A" of the Agreement provides Fersel is entitled to payment for "finalized work" when it is "received" by Paramount (Landow Dec. ¶ 77). Fersel's work regarding many patients was not finalized until the arbitration awards were issued or denied. (Landow Dec. ¶ 77). With many patients, Fersel never finalized his work because he left Paramount before some arbitrations were filed for patients he treated, and he left before those awards were issued. (Landow Dec. ¶ 77; Def. Exs. 22-26).

### G. Fersel's Damage Calculations are Inaccurate

Even if Fersel is entitled to revenue for work he performed after he left, his calculations are wrong and grossly inflated. (Landow Dec. ¶ 87). Based on Fersel's calculations, the total amount Paramount collected was $246,476. (Landow Dec. ¶ 88; Singh Dec. ¶¶ 4-12). But, based on the exhibits attached to Fersel's motion for summary judgment, the total amount Paramount collected less attorneys' fees, interest, and filing fees was $131,079.91. (Landow Dec. ¶ 88; Singh Dec. ¶¶ 4-12; Def. Exs. 21-22, 24-27) This means he would be entitled only to $52,439.16 – not the $92,624.92 he claims. (Landow Dec. ¶ 89; Singh Dec. ¶ 13; Ex. E).

### H. Paramount was not Responsible for Fersel's COBRA Payments

Under COBRA, Paramount's only obligation as a former employer was to notify Fersel he could apply for COBRA coverage for his health insurance after his employment terminated. (Landow Dec. ¶ 90). Fersel filled out an application and gave Paramount an initial payment. (Landow Dec. ¶ 91).

Thereafter, Fersel's payments were late, and the insurance company did not accept late payments for COBRA coverage. (Landow Dec. ¶ 92).

It was the insurance company's decision to terminate Fersel's health insurance under COBRA – not Paramount's. (Landow Dec. ¶ 94). Paramount has no obligation to Fersel regarding COBRA. (Landow Dec. ¶ 95).

**ARGUMENT**

**POINT I**

**SUMMARY JUDGMENT STANDARD**

The standards for summary judgment are well known-it is proper only where, construing the evidence in the light most favorable to the non-movant, "there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Redd v. N.Y. Division of Parole,* 678 F.3d 166, 173–74 (2d Cir. 2012).

A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "Summary judgment is appropriate only '[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Donnelly v. Greenburgh Central School District No. 7,* 691 F.3d 134, 141 (2d Cir. 2012) (cleaned up).

The initial is burden on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the moving party has met this burden, opposing party must identify specific facts and affirmative, hard evidence that contradict those offered by the moving party to demonstrate there is a genuine issue for trial. *Id.* at 324*; see also Anderson,* 477 U.S. at 256–57; *D'Amico v. City of N.Y.,* 132 F.3d 145, 149 (2d Cir. 1998) (collecting cases).

Construing evidence most favorable to Paramount, Plaintiff is not entitled to summary judgment. Rather, under the plain terms of the Agreement it is Paramount who is entitled to summary dismissal of the breach of contract, quasi contract and New York labor law claims.

## POINT II

### FERSEL'S CLAIMS FOR QUANTUM MERUIT AND UNJUST ENRICHMENT MUST BE DISMISSED SINCE HE ASSERTS THE EXISTENCE OF AN ENFORCABLE CONTRACT

Fersel's second cause of action for quantum meruit and third cause of action for unjust enrichment must be dismissed as duplicative of his breach of contract cause of action.

A plaintiff may not recover in quasi contract where the parties have a valid, enforceable contract that governs the same subject as the claim for quasi contract.

*Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168 (2d Cir. 2005); *see also Global Funding Group, LLC v. 133 Community Road, Ltd.*, 251 F.Supp.3d 527, 533 (E.D.N.Y. 2017). As Fersel and Paramount agree that a valid and enforceable contract exists between them, the quasi- contract claims must be dismissed. *Id.*

**POINT III**

**THE CONTRACT DOES NOT CALL FOR FERCEL TO RECEIVE PAYMENTS RECEIVED BY PARAMOUNT AFTER THE TERMINATION OF HIS EMPLOYMENT**

The basic tenants of contract interpretation under New York law are well known.

As this Court has recognized, the Court interprets written contracts to give effect to the intention of the parties as expressed in the unequivocal language they have employed. *First Data Merch. Servs. Corp. v. Oxford Mgmt. Servs., Inc.*, No. 07-CV-2083-RRM-ETB, 2011 WL 1260223, at *3 (E.D.N.Y. Mar. 30, 2011).

Interpreting a signed, unambiguous contract is a matter of law. *First Data Merch. Servs. Corp. v. Oxford Mgmt. Servs., Inc.*, at *3; *Postlewaite v. McGraw–Hill, Inc.,* 411 F.3d 63, 67 (2d Cir.2005).

Absent ambiguity the court interprets the plain meaning of the contract. *Hirsch v. Qingdao Orien Com. Equip. Co.*, No. 12-CV-952 RRM, 2015 WL 1014352, at *8 (E.D.N.Y. Mar. 6, 2015) (internal citations and quotations omitted).

Ambiguity exists if the contract is objectively susceptible to more than one interpretation by a person of ordinary intelligence who has examined the entire agreement and understands the customs and terminology of this particular business. *First Data Merch. Servs. Corp. v. Oxford Mgmt. Servs., Inc.*, No. 07-CV-2083-RRM-ETB, 2011 WL 1260223, at *3 (citing cases).

That the parties urge different interpretations does not imply ambiguity; nor does ambiguity exist if one view "strain[s] the contract language beyond its reasonable and ordinary

meaning." *Id.* (internal citations omitted). "If the court finds that the contract is not ambiguous it should assign the plain and ordinary meaning to each term and interpret the contract without the aid of extrinsic evidence and it may then award summary judgment." *Int'l Multifoods Corp. v. Commercial Union Ins. Co.,* 309 F.3d 76, 83 (2d Cir.2002).

Here, the unambiguous language of the employment contract shows that since Fersel was not employed when Paramount received the payments from arbitration awards or voluntary payments, he is not entitled to them.

Article IV of the contract, which addresses compensation, says that Fersel's revenue share, 40% of the fees collected, does not become earned until: 1) finalized work on the patient is completed; and 2) payment is received by Paramount. Finalized work includes those steps necessary for the payment to be obtained by Paramount. (Landow Dec. ¶¶ 77-81).

Under the Agreement, Fersel's claims for compensation which were received by Parmount after his separation from Paramount fail under the Agreement. Only upon Paramount's receipt of the fees Fersel is claiming due to him-if he was still employed by Paramount at the time-would they become due. All Fersel's claims for compensation are for arbitration awards post-termination of his employment. Since none of the fees were earned under the contract before he left-performed, finalized and paid- Fersel's contract claim and Labor Law claim should be dismissed.

Because Fersel's fee sharing agreement, which was contingent upon payment by insurance carriers and Paramount prevailing in arbitrations, did not guarantee him payment for all the work he performed. It fundamentally resembles a commission agreement.

Under New York law, contingent employment agreements, such as commission agreements, which do not require payment to the employee until fees have been received have been long held not be due the employee if the employment was terminated before receipt of the

11

payment. *Linder v. Innovative Commercial Systems LLC*, 41 Misc.3d 1214(A), at *3, 981 N.Y.S.2d 636 (Sup. Ct. N.Y. Cnty. 2013).

Fersel's Agreement does not differ from a commissioned salesman- it was contingent on payment from insurance carriers-often after proceeding to arbitration. Most important, the payments were not earned until "received" by Paramount as per the language of the contract.

As Fersel acknowledged, if insurance payments go to arbitration due to refusal to pay for the services rendered, Paramount might not receive those payments for several years, if at all.

The Agreement's provision for payment on the 10th day of each month does not change the analysis. Only those patients' fees received would be due on that date.

And, since the Agreement did not call for payment to be paid after Fersel's employment with Paramount ended, the fees he claims are simply not due him. Employees are not entitled to post-termination commissions unless the employment contract expressly says so. *See Apple Mortgage Corp. v. Barenblatt*, 162 F.Supp.3d 270, 289 (S.D.N.Y. 2016); *Bravia Capital Partners, Inc. v. Fike*, 2011 WL 6081345, at *3 (S.D.N.Y. Dec. 6, 2011); *Mackie v. LaSalle Indus.*, 92 A.D. 2d 821, 822, (1st Dept. 1983); *Linder v. Innovative Commercial Systems LLC*, 41 Misc.3d 1214(A), at *3, 981 N.Y.S.2d 636 (Sup. Ct. N.Y. Cnty. 2013); *Pachter v. Bernard Hodes Group,Inc.*, 10. N.Y.3d 609, 613, 861 N.Y.S. 2d 246, 247 (2008).

As Fersel's Agreement only called for him to be paid when fees were received and did not provide for post-termination payment, his claims must fail.

Finally, Fersel's argument that Paramount's former counsel's statement at a pre-motion conference conclusively determines Paramount's liability under the contract is incorrect. Counsel's statement at a pre-trial conference does not necessarily bind the party as a judicial

admission particularly if it is not inconsistent with a current position. *See Eunhasu Corp. v. Norguard Ins. Co.*, 2020 WL 5513159 (S.D.N.Y Sept. 14, 2020)

Here, Mr. Kim may have said Fersel was entitled to payments even if he left Paramount. That question and response are true-if the payments were received by Paramount *before* Fersel left Paramount's employment. The response is not inconsistent with Paramount's position on this motion that payments are not due for those received after Fersel left Paramount's employ. Rather, it is an over-generalization of the parties' obligations under the Agreement.

The surrounding circumstances of Mr. Kim's colloquy with the Court does not favor giving effect to his incomplete response. Fersel's own counsel admitted Mr. Kim was not the lead attorney on the case. (See, Def. Ex. 16, pg 3). Dr. Landow had never spoken to Kim or knew he would be attending the conference. (See, Landow Dec. ¶ 83). And, Mr. Kim admitted to the Court his firm was being replaced by new counsel. (See, Landow Dec. ¶ 84; Def. Ex. 16, pg. 2-3). Nor was this a hearing on a fully briefed motion or "presentation of a factual nature" which would "rise to the level of the testimonial statements by any of the defendants." *In Re Basic Food Group*, *LLC*, 2016 WL 3677673 * 17, fn. 6 (Bk. Ct. S.D.N.Y 2016).

Under the circumstances, Fersel's attempt to bind Paramount to Mr. Kim's incomplete response to the Court's question must fail.

### POINT IV

### FERSEL IS NOT ENTITLED TO DAMAGES UNDER THE FAITHLESS SERVANT DOCTRINE

Under the faithless servant doctrine, as Fersel was working for another company, his own, while he was employed by Paramount, all his claims must be dismissed.

While the faithless servant doctrine was not plead as an affirmative defense, nonetheless the Court should consider the defense. Alternatively, the Court should permit Paramount to amend

its answer to assert the defense and deny summary judgment since a question of fact exists as to whether Fersel violated the faithless servant doctrine.

1.      **Faithless Servant Doctrine as a Defense on Summary Judgment**

Under New York law, an agent must be loyal to his employer and is prohibited from acting inconsistent with his agency or trust and is bound to exercise the utmost good faith and loyalty in the performance of his duties. *Western Elec. Co. v. Brenner,* 41 N.Y.2d 291, 295, 392 N.Y.S.2d 409, 360 N.E.2d 1091 (1977) (cleaned up) "One who owes a duty of fidelity to a principal and who is faithless in the performance of his services is generally disentitled to recover his compensation, whether commissions or salary." *Feiger v. Iral Jewelry, Ltd.,* 41 N.Y.2d 928, 928, 394 N.Y.S.2d 626, 363 N.E.2d 350 (1977); *Phansalkar v. Andersen Weinroth & Co., L.P.*, 344 F.3d 184, 200 (2d Cir. 2003).

"New York courts… apply two alternative standards for determining whether an employee's conduct warrants forfeiture under the faithless servant doctrine." *Khaldei v. Kaspiev*, 135 F.Supp.3d 70, 84 (S.D.N.Y. 2015) citing *Phansalkar v. Andersen Weinroth & Co.* , 344 F.3d at 202; *Stanley v. Skowron*, 989 F.Supp.3d 356, 359 (S.D.N.Y. 2013).

"The first – and more stringent – standard is satisfied where the misconduct and unfaithfulness… substantially violates the contract of service such that it permeates the employee's service in its most material and substantial part." *Khaledi*, 135 F.Supp.3d at 84.

"By comparison, the second standard requires that the agent's misconduct rise to the level of a breach of duty of loyalty or good faith." *Id.* "In other words, it is sufficient that the employee acts adversely to his employer in any part of the transaction, or omits to disclose any interest which would naturally influence his conduct in dealing with the subject of the employment." *Id.*

An employee is "obligated to be loyal to his employer and is prohibited from acting in any manner inconsistent with his agency or trust and is at all times bound to exercise the utmost good faith and loyalty in the performance of his duties." *Id.*

"An employee who is found to be faithless normally forfeits all compensation received during the period of disloyalty regardless of whether the employer suffered any damages." *Stanley*, 989 F.Supp.2d at 360.

Paramount has produced substantial evidence that Fersel breached his duty of loyalty to it such that his claims for compensation, even if valid, must be forfeited.

Fersel breached both standards for the faithless servant doctrine. The Agreement provides that Fersel may not work at any of the facilities where Paramount does business with any Referral Sources. (See, Def. Ex. 1). Fersel did business with Dr. DiMaggio – the principal of Touch Stone, one of Paramount's Referral Sources – in December 2017, during which it is undisputed he was under the employ of Paramount. (See, Ex. B; Landow Aff. ¶ 69). This is the definition of unfaithfulness under the doctrine.

Instead of bringing that business to Paramount, Fersel took it under his entity – CNM – and deprived Paramount of that business, which is not permitted under the Agreement. Taking patients from Paramount permeated Fersel's employment with Paramount as its entire business was based on treating no-fault patients. There can be no reasonable explanation for Fersel's unfaithfulness to Paramount other than that he thought he would be clever and try to get away with it.

Fersel also breached the second standard. Fersel acted adversely to the company- he worked with Dr. DiMaggio in treating no-fault patients during his employment with Paramount for his own benefit.

And, after Fersel left Paramount, he contracted with the Referral Sources, which violated the Restrictive Covenant of the Agreement. These contracts with the Referral Sources also took business away from Paramount and violated Fersel's contractual duty to the company.

Since Fersel violated the faithless servant doctrine, he is not entitled to the compensation he seeks as all of that compensation occurred during the period he was an unfaithful servant.

### 2. The Court Should Allow Paramount to Amend its Answer to Add a Counterclaim Under the Faithless Servant Doctrine

Under Rule 15 of the Federal Rules of Civil Procedure, leave to amend a party's pleading "shall be freely given when justice so requires." Fed. R. Civ. Proc. 15. The standard for granting an amendment is well known

"Generally a district court has discretion to deny leave for good reason, including bad faith, undue delay, or undue prejudice to the opposing party. Where, as here, a scheduling order governs amendments to the complaint, the lenient standard under Rule 15(a)… must be balanced against the requirement under Rule 16(b) that the Court's scheduling order shall not be modified except upon a showing of good cause." *Holmes v. Grubman*, 568 F.3d 329, 334 (2d Cir. 2009) (cleaned up).

"To show good cause, a movant must demonstrate diligence before filing her motion, such that despite the movant's effort, the deadline to amend the pleadings could not have been reasonably met. While the movant's diligence is the primary consideration, the Court may also inquire whether the amendment will significantly prejudice the nonmoving party." *Scott v. Chipotle Mexican Grill, Inc.*, 300 F.R.D. 193, 197 (S.D.N.Y. 2014) (cleaned up).

"A party fails to show good cause when the proposed amendment rests on information that the party knew, or should have known, in advance of the deadline." *Perfect Pearl Co., Inc. v. Majestic Pearl & Stone, Inc.*, 889 F.Supp.2d 453, 457 (S.D.N.Y. 2012).

The Court must consider whether the defense being raised for the first time on summary judgment would be prejudicial to the plaintiff. *Monahan v. N.Y. City Dept. of Corrections*, 214 F.3d 275, 283 (2d. Cir. 2000).

While the time for moving to amend Paramount's answer expired on August 31, 2018, an amendment to assert the defense for the faithless servant doctrine could not have been asserted at that time. Paramount only discovered Fersel violated New York's faithless servant doctrine after Fersel moved for summary judgment.

Specifically, in verifying Paramount's damages claims through the AAA database, Paramount discovered while calculating the damages in preparation to respond to Fersel's instant motion for summary judgment. The AAA award where Paramount discovered Fersel's faithlessness was not awarded until April 23, 2019 – after the period to file an amended answer expired.

Even though Paramount's prior counsel attempted to assert this defense earlier (Dckt 31) that attempt was premature. Paramount possessed no evidence that Fersel was conducting his own business with Paramount's referral sources. Paramount's prior counsel merely lumped together its breach of contract counterclaim with the faithless servant doctrine without identifying how the faithless servant doctrine claim is different. This was insufficient to assert the claim.

Since Paramount only recently discovered Fersel's affirmative faithless servant doctrine violation and since the arbitration award Paramount relies on was not issued until 2019, the Court should permit the amendment of Paramount's answer to include an affirmative defense of the faithless servant doctrine.

Fersel will not be prejudiced by the amendment. He is personally in possession of all the evidence related to his own employment.

Accordingly, if the Court concludes that amendment of the answer must assert the defense of faithless servant, the Court should grant an amendment of the Answer.

Upon granting the amendment, the Court should deny Fersel summary judgment.

## POINT V

## QUESTIONS OF FACT EXIST AS TO FERSEL'S DAMAGES

Even if Fersel could show he is entitled to damages because of a breach of the Agreement his calculations as to what he is owed is wrong.

Fersel claims Paramount received $246,476.46 for the patients Fersel treated while employed by Paramount. (See, Landow Dec. ¶ 88; Singh Dec. ¶4). Fersel's calculations are wrong.

First, Fersel included in his calculations the filing fee for the AAA arbitrations, the attorneys' fee paid after an arbitration award was awarded, and interest calculations. (See, Singh Dec. ¶ 9). These amounts should not have been included. (See, Id.). Fersel also wrongly included AAA awards where the AAA status was only "acknowledged" – not awarded. (See, Singh Dec. ¶ 11). This means AAA did not yet issue an award, if it is going to at all. (See, Id.).

Instead, the calculations should only include the principal amount received from AAA arbitration awards and any payments voluntarily received from no-fault insurance carriers. (See, Id.).

As a result, Paramount only received $131,079.91 inclusive of the principal AAA awards and voluntary insurance payments. (See, Singh Dec. ¶ 12). If Fersel was entitled to damages, which he is not, he would be entitled to $52,439.16 – not $92,624.92, which he claims he is owed. (See, Singh Dec. ¶ 13).

## POINT VI

### SUMMARY JUDGMENT MUST BE DENIED SINCE ANY DAMAGES FERSEL IS ENTITLED WOULD BE OFFSET BY PARAMOUNT'S COUNTERCLAIMS

If the Court determines Fersel is entitled to damages, which he is not, Fersel's damages are offset by the damages Paramount is entitled to under its counterclaims. This precludes summary judgment as to his damages.

"A meritorious counterclaim in any litigation will nearly always offset a defendant's liability on a plaintiff's claim." *Cambridge Valley Machining, Inc. v. Hudson MFG LLC*, 2020 WL 6058787 (N.D.N.Y. 2020); *see also Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 2005 WL 832050 (S.D.N.Y. 2005); *Rockland Exposition, Inc. v. Alliance of Automotive Service Providers of N.J.*, 894 F.Supp.2d 288 (S.D.N.Y. 2012).

Until Paramount's counterclaim for Fersel's breach the restrictive covenant is adjudicated Fersel is not entitled to summary judgment as to any damages.

## POINT VII

### PARAMOUNT DID NOT ILLEGALLY DEDUCT FERSEL'S WAGES

Since Fersel was not entitled to compensation after he left Paramount, it is impossible for Paramount to have impermissibly deducted those wages. Accordingly, Fersel's claims under the Labor Law must be dismissed.

## POINT VIII

### THE NON-COMPETE PROVISIONS OF THE AGREEMENT ARE ENFORCEABLE

Fersel claims there are three (3) reasons the Non-Compete and Non-Solicitation clauses in the Agreement are unenforceable: (1) Paramount itself terminated Fersel's employment and otherwise breached the Agreement; (2) Paramount had no legitimate interest in the Non-Compete

and (3) the Non-Compete is unenforceable on its face under New York law. Fersel is wrong in all three respects.

Initially, Fersel misunderstands Paramount's claim under the restrictive covenant. Only the two-year non-compete in Article 10.01 is issue. This provision is more than reasonable under New York law which applies. See Article 11.05.

Restrictive covenants in an employment agreement, especially in the medical profession, are enforceable where the employee resigns from his employment if the restrictive covenant is (1) no greater than what is required to protect the legitimate interests of the employer; (2) does not impose undue hardship on the employee; and (3) is not injurious to the public. *See Awwad v. Capital Region Otolaryngology Head & Neck Group, LLP*, 18 Misc.3d 1111(A), 856 N.Y.S.2d 22, at *1-*3 (Sup. Ct. Albany Cty. 2007) (showing that the court did not consider the termination of the employee in its analysis where the employee gave the employer requisite termination notice under the agreement).

## A.     Fersel Left Paramount on His Own Volition

Under New York law, "a restrictive covenant will be enforceable without regard to reasonableness if an employee left his employment voluntarily." *Morris v. Schroder Capital Management Intern.*, 481 F.3d 86, 88 (2d Cir. 2007).

Initially, Fersel claims Paramount "required" him to provide 60-days' notice of termination under the Agreement if he would not agree to Paramount's proposed modifications. He also claims his resignation was in response to Paramount telling him it was required. Fersel relies on an email from Dr. Landow dated January 23, 2018, which states, in pertinent part, "[i]f we are unable to reach an accord, pursuant to the agreement we will require 60 days (sic) prior written notice. Thank you." (See, Landow Dec. ¶ 57; Def. Ex. 5).

Fersel claims this email meant he absolutely had to terminate the Agreement and provide 60 days' notice. He is wrong. The above-referenced email merely indicates there was a disagreement as to compensation and Dr. Landow welcomed an amicable parting if it was unacceptable. The email also indicates if Fersel was not satisfied or amenable to Dr. Landow's request, under the Agreement he had to provide 60 days' written notice to leave Paramount.

Instead of engaging in further negotiations with Paramount to reach an agreement amenable to both parties, Fersel responded: "[v]ery good, Jonathan, as you wish. You have your official written notice of my termination in sixty days." (See, Def. Ex. 5; Landow Dec. ¶ 58).

Fersel's response indicates he resigned on his own volition. This make the Non-Compete clauses enforceable.

**B.     The Covenants not to Compete and Non-Solicitation are Enforceable Because they Run for a Short Time-Period and are Limited in Radius**

Fersel claims the covenants not to compete and non-solicitation in the Agreement are unenforceable because the time periods are too long and because the location is limited. He is wrong.

"[A] restrictive covenant will only be subject to specific enforcement to the extent that it is reasonable in time and area, necessary to protect the employer's legitimate interests, not harmful to the general public and not unreasonably burdensome to the employee." *BDO Seidman v. Hirshberg*, 93 N.Y.2d 382, 389, 690 N.Y.S.2d 854, 712 N.E.2d 1220 (N.Y. 1999); *accord Crye Precision LLC v. Bennettsville Printing*, 755 F. App'x 34, 36 (2d Cir. 2018) (summary order).

"Under New York law, it is well-established that a covenant restricting competition will be enforced against medical professionals if such covenants are limited temporally and geographically without being harmful to the public or unduly burdensome and serve the acceptable

purpose of protecting the employer from unfair competition." *See In re Hirschhorn*, 156 B.R. 379, 386 (Bk. E.D.N.Y. 1993) (cleaned up).

Contrary to Fersel's argument, courts in this District have consistently held that that two-years is a reasonable period for non-compete clauses to remain in effect. *See In re Hirschhorn*, 156 B.R. 379, 386 (Bk. E.D.N.Y. 1993) (holding two years was a reasonable period for a restrictive covenant); *Inflight Newspapers, Inc. v. Magazines In-Flight, LLC*, 990 F.Supp. 119, 135 (E.D.N.Y. 1997) (holding the duration of two years limiting the enforceability of the non-compete clause was reasonable).

Even worse for Fersel's argument that a two-year restriction is unreasonable as a matter of law, New York courts have upheld that medical professionals can have much longer restrictive covenants, especially where the restrictive covenants are limited to the poaching of referral sources. *See Awwad*, 856 N.Y.S.2d 22 (Table), at \*4; *Gelder Medical Group v. Webber*, 41 N.Y.2d 680, 685, 363 N.E.2d 573, 394 N.Y.S.2d 867 (1977) ("it was quite reasonable to limit the noncompetition term to five years"); *Karpinski v. Ingrasci*, 28 N.Y.2d 45, 50, 268 N.E.2d 751, 320 N.Y.S.2d 751 (1971) ("relief for violation of these contracts will not be denied merely because the agreement is unlimited as to time, where as to area the restraint is limited and reasonable").

The non-compete clauses and restrictive covenant limit Fersel from competing with Paramount for two (2) years and three (3) years after the termination of his employment, which is reasonable. (See, Def. Ex. 1).

And, the restrictive covenants and non-compete clauses are as narrowly restricted geographically. The restrictive covenant is limited only to the offices where the Referral Sources operate. (See, Landow Dec. ¶ 71; Def. Ex. 1). This means Fersel could work in a medical office next door to one of the Referral Sources so long as it was not within the same office as the Referral

Source. This cannot be considered unduly burdensome because it allows Fersel to look for work anywhere he wishes while allowing Paramount to preserve its Referral Sources.

Fersel came to know of the Referral Sources through Paramount whether or not Paramount operated at the specific offices where Fersel and his entities now operate. It is false that Paramount formed a relationship with Shashek after Fersel left Paramount. It is also false that Paramount never formed a relationship with Touch Stone. (See, Landow Dec. ¶ 61). Paramount did not always have written agreements with its Referral Sources, but that did not mean there was no relationship and Fersel knew that. (See, Landow Aff. ¶¶ 63-65).

Since the restrictive covenants are reasonable in terms of the length of the restriction and as well geographically the Court must hold them as enforceable.

### C.     Paramount's Legitimate Interest in the Restrictive Covenant

Under New York law, restrictive covenants will be enforced if the employer has legitimate interests to protect, which include: "the misappropriation of trade secrets or confidential customer information; competition by former employees whose services are unique or extraordinary; and the exploitation or appropriation of an employer's goodwill and customers." *Awwad*, 856 N.Y.S.2d 22 (Table), at *4; *BDO Seidman v. Hirschberg*, 93 N.Y.2d at 388-89, 712 N.E.2d 1220, 690 N.Y.S.2d 854 (1999).

"Particular respect has been given to post-employment covenants entered into by members of a learned profession, especially medical professionals. In such cases, the Court of Appeals has given greater weight to the interests of the employer in restricting competition…" *Awwad*, 856 N.Y.S.2d 22 (Table), at *4.

New York courts have upheld restrictive covenants where former medical associates would directly compete with the practitioner for referrals from a narrow group of sources for their medical practice specialty. *Awwad*, 856 N.Y.S.2d 22 (Table), at *4; *BDO Seidman* 93 N.Y.2d at 390-91.

Paramount's restrictive covenant only limited Fersel from practicing with  and obtain patients from, the Referral Sources of Paramount  This was a reasonable basis for Paramount because its revenue was generated on a referral basis.

No credence must be given to Fersel's argument that Paramount has no legitimate interest in its Referral Sources and protecting the locations it was providing service.  This is particularly so since New York courts have upheld restrictive covenants limited to referral sources. *Awwad*, 856 N.Y.S.2d 22 (Table), at *4; *BDO Seidman* 93 N.Y.2d at 390-91. Even if the Referral Sources wanted to terminate their relationships with Paramount, as Fersel suggests, that argument has no merit in the enforceability of the restrictive covenant.

Since Paramount had a legitimate interest in maintaining its referral sources, the restrictive covenant must be enforced.

**D.      Fersel Breached the Covenants Not to Compete Before his Employment Terminated with Paramount**

Fersel claims that the Non-Compete clauses and restrictive covenants in the Agreement are unenforceable because Paramount breached the Agreement by not paying Fersel. This argument fails since Fersel breached the Agreement before he and Paramount entered discussions regarding extending his Agreement, and before he claims he was owed any revenue.

Initially, Fersel was providing services under a separate entity at the Paramount locations before he left Paramount's employ. (Landow Dec. ¶ 69; Exs. B-D). This means he was breach before he and Dr. Landow engaged in discussions regarding an extension in Fersel's Agreement.

Since a question of fact exists as to whether Fersel breached the Agreement with Paramount before he could have been owed any revenue, the restrictive covenants must be upheld and enforced.

Moreover, Fersel is incorrect that Paramount breached the Agreement as to payment-Fersel was paid all the compensation he was owed before leaving the Company. He was owed nothing after he left. See Point III, *Infra*.

**POINT IX**

**PARAMOUNT IS NOT RESPONSIBLE FOR FERSEL'S COBRA CLAIMS**

Fersel's claim that Paramount is responsible to pay the $9,183.55 that Fersel incurred in out-of-pocket medical expenses is baseless.

Under New York Insurance Law § 3221(m) ("NY COBRA"), which is more stringent than the Federal COBRA law, if an employee is terminated, such employee shall be entitled to continue his health insurance under his previous employer's policy. N.Y. Ins. § 3221(m).

An employee seeking continuation of his health insurance coverage must request such coverage in writing within sixty (60) days of termination or the date the employee was sent notice by first class mail of the right of continuation by the group policy holder. *Id.*

However, continuation of health insurance benefits terminates under NY COBRA if the former employee fails to make timely payment of any insurance premium. N.Y. Ins. § 3221(m); *see also Rambam v. Oxford Health Plans, Inc.*, 306 A.D.2d 467, 468, 7612 N.Y.S.2d 320, 320 (2d Dept. 2003) (holding that the plaintiff's group health insurance policy was properly canceled where plaintiff failed to remit insurance premiums in a timely fashion).

While it is undisputed that Fersel requested continuing health insurance coverage under NY COBRA, Fersel also failed to make multiple timely payments to Paramount's insurance company. (See, Landow Dec. ¶ 92).

Under NY COBRA, Paramount's obligations to Fersel regarding NY COBRA ceased after it informed Fersel of his right to continue his insurance coverage. After that point, it was Fersel's responsibility to make timely payments if he continued his insurance benefits. It was not Paramount's responsibility to remind Fersel to pay the insurance company on time each month.

Based on the foregoing, Fersel's claim that Paramount is responsible to pay his out-of-pocket medical expenses must be denied.

## CONCLUSION

For all of the foregoing reasons, it is respectfully requested that this Honorable Court deny Plaintiff's motion for summary judgment in its entirety, grant Defendant's cross-motion for summary judgment in its entirety, and grant Defendant such other and further relief as may be just and proper.

Dated: Lake Success, New York
     April 5, 2021

> Yours, etc.
> HARFENIST KRAUT & PERLSTEIN, LLP
>
>
> By: _____*Steven J. Harfenist*_____
> Steven J. Harfenist
> *Attorneys for Defendant*
> 3000 Marcus Avenue, Suite 2E1
> Lake Success, New York 11042
> T: (516) 355-9600
> F: (516) 355-9601
> E: SHarfenist@hkplaw.com