UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------- X

JORDAN FERSEL, M.D.,   :

                             :   1:18-cv-2448 (AMD) (CLP)

                Plaintiff,   :

                             :

      -against-   :

                             :

PARAMOUNT MEDICAL SERVICES, P.C.,   :

                             :

              Defendant.   :

------------------------------------------------------------------- X

**PLAINTIFF'S SUR-REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF HIS MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN FURTHER OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

ROTTENBERG LIPMAN RICH, P.C.
Bertrand Sellier
C. Zachary Rosenberg
The Helmsley Building
230 Park Avenue, 18th Floor
New York, New York 10169
(212) 661-3080
Attorneys for Plaintiff, Jordan Fersel, M.D.

TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii


ARGUMENT ........................................................................................................................1

I.      The Court Should Strike Exhibits H, I and K to the Landow Reply Declaration ................1

II.     Paramount Failed to Reach an Agreement with Touch Stone
        for Reasons Unrelated to Dr. Fersel ..........................................................................5

III.    Dr. Fersel Was Not Paid for the Work He Performed ...........................................6

IV.     None of the Unproduced Exhibits Are Relevant to
        Dr. Fersel's Claims for Breach of Contract and Labor Law Violations ..............7


CONCLUSION ....................................................................................................................8

i

<u>TABLE OF AUTHORITIES</u>

**Cases**

*BDO Seidman v. Hirshberg*,
93 N.Y.2d 382 (1999) ................................................................................................................. 5

*Patterson v. Balsamico*,
440 F.3d 104, 117 (2d Cir. 2006)............................................................................................ 2, 3

*Pilitz v. Inc. Vill. of Freeport*,
No. 12-CV-5655(JS)(ARL), 2020 WL 6945927 (E.D.N.Y. Nov. 25, 2020) ................................ 2

*U.S. ex rel. Karlin v. Noble Jewelry Holdings Ltd.*,
No. 08 CIV. 7826 JGK KNF, 2012 WL 1228199 (S.D.N.Y. Apr. 9, 2012) ................................. 4

In accordance with the Court's Order dated December 15, 2021 directing Dr. Fersel[1] to address Dr. Landow's reply declaration (the "Landow Reply Decl.") and the exhibits thereto filed at Docket No. 63, Dr. Fersel respectfully submits this sur-reply memorandum of law in further support of his Motion and in opposition to Paramount's Cross-Motion.

## PRELIMINARY STATEMENT

The Court should disregard the Landow Reply Decl. both because the content of the declaration and the exhibits thereto were improperly submitted for the first time on reply and because Exhibits H, I, and K thereto (the "Unproduced Exhibits") were not produced during discovery.  Even if the Court were to consider the Landow Reply Decl., the Exhibits H and I attached thereto only confirm that Paramount's negotiations with Touch Stone broke down well before Dr. Fersel leased space from it.  Exhibit K to the Landow Reply Decl., meanwhile, only confirms that Paramount received funds for Dr. Fersel's work.  It does not demonstrate that Paramount paid any portion of those proceeds to Dr. Fersel and, in fact, Paramount has already repeatedly admitted that it did not do so.  For these reasons, and those set forth below, the Court should grant Dr. Fersel's motion for summary judgment and deny Paramount's Cross-Motion.

## ARGUMENT

**I.    The Court Should Strike Exhibits H, I, and K to the Landow Reply Decl.**

As set forth in detail in Dr. Fersel's letter motion dated June 9, 2021 (Dkt. 66), which is hereby incorporated by reference, Paramount failed for nearly three years to produce the Unproduced Exhibits and disclosed them for the first time when filing its reply. All three exhibits were clearly in Paramount's possession custody and control – Exhibit H consists of text

---

[1] Capitalized terms not defined herein have the meanings assigned to them in Dr. Fersel's moving memorandum of law (the "Moving MOL") and/or reply memorandum of law ("Reply MOL").

messages from Paramount's owner's phone, Exhibit I consists of a chart created and maintained by Paramount, and Exhibit K consists of a record from Paramount's attorney – and Paramount admitted in its opposition to Dr. Fersel's letter motion (Dkt. 67) that it never produced these documents.

"The Second Circuit has identified four factors a court must consider when determining whether preclusion is an appropriate sanction: (1) the party's explanation for the failure to comply with the disclosure obligation; (2) the importance of the testimony of the precluded [evidence]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." *Pilitz v. Inc. Vill. of Freeport*, No. 12-CV-5655(JS)(ARL), 2020 WL 6945927, at *3 (E.D.N.Y. Nov. 25, 2020), citing *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006).  In addition, pursuant to Rule V(A)(11) of the Individual Rules of Judge Mauskopf, who was presiding over this case at the time of the filing of the joint pre-trial order, "Only exhibits listed [on the proposed joint pre-trial order] will be received in evidence except for good cause shown."  None of the exhibits at issue were listed on the joint pre-trial order (Dkt. 24).

Here, Paramount's explanation for its failure to produce the documents is that they were not called for by Dr. Fersel's document demands.  Dr. Fersel's Requests were not simply "generalized" demands, but specific, e.g. "**[a]ll documents concerning the allegation in paragraph 97 of the Answer and Counterclaims that Dr. Fersel 'poach[ed] the third-party medical providers that PARAMOUNT had existing licensing service agreements with.**'" In his answer to Paramount's counterclaims, Dr. Fersel explicitly denied Paramount's allegation that "DR. FERSEL knew that PARAMOUNT had licensing service agreements with various third-party medical providers."  (Dkt. 6, 10 ¶ 98.)  Paramount was clearly on notice that

2

documents purportedly evidencing any relationship it had with the practices with which it claims Dr. Fersel interfered were at issue and had to be produced. Paramount, therefore, lacks any reasonable explanation whatsoever for its failure to comply with its discovery obligations, let alone the necessary "good cause."

Turning to the remaining *Patterson* factors, the Unproduced Exhibits are important because the court could potentially (but, as discussed below, should not) find that they create an issue of fact regarding whether Paramount ever had a relationship with Touch Stone and whether Dr. Fersel received payment for certain services. Dr. Fersel is further prejudiced because he had no opportunity to take discovery from Paramount, Touch Stone, or Paramount's billing attorney concerning the Unproduced Exhibits. This case is now three years old (due in large part to Paramount's other failures to produce documents and its multiple changes of counsel, see Dkt. 28, 30, 34, 35, 36, 37, and 39) and summary judgment is now, at long last, fully briefed. Further delaying the case to enable more discovery and briefing would be extremely prejudicial to Dr. Fersel, who filed this action to recover his unpaid compensation.

Paramount argues that the Court should nonetheless consider the Unproduced Exhibits because they supposedly only became relevant on reply and do not cause Dr. Fersel any prejudice (Dkt. 67). The notion that the Unproduced Exhibits only became relevant upon reply is belied by the record. The Unproduced Exhibits are being used to support Paramount's claim that it purportedly had a relationship with Touch Stone with which Dr. Fersel allegedly interfered. Paramount had an obligation in its moving papers to demonstrate each element of that claim, including that it had a relationship with Touch Stone with which Dr. Fersel interfered. Dr. Fersel even argued in his own Motion (served before Paramount's its Cross-Motion) that Paramount had no relationship with Touch Stone with which Dr. Fersel could interfere, so

3

Paramount was clearly on notice that this was an issue before it filed its moving papers. [Dkt. 44-2 p. 19, Dkt. 47]. The Unproduced Exhibits did not become relevant only on reply.

Contrary to Paramount's final argument, Dr. Fersel was prejudiced by not having the opportunity to conduct further discovery regarding the Unproduced Exhibits. For example, the text messages in Exhibit H appear to demonstrate that the reason Paramount failed to secure a relationship with Touch Stone is a dispute over the use of certain creams and a potential insurance investigation. Now that discovery is complete, Dr. Fersel has no opportunity to explore those issues. Exhibit I consists of a chart with Dr. Fersel's name at the top, a date, a redacted list of patients, and some check marks. Dr. Fersel has no ability to ask Paramount or Touch Stone who made the chart, how it came into being, and what it means. Exhibit K is a record from Paramount's attorney showing a payment, which Dr. Landow says proves that Paramount received a certain payment at issue prior to Paramount's last paycheck to Dr. Fersel. Dr. Fersel is now being expected to rely solely on his adversary's representation without being able to cross-examine Dr. Landow or take discovery of Paramount's attorney about when the payments were sent to Paramount.

The Court, therefore, should strike the Unproduced Exhibits and preclude their use for the remainder of the case.[2]

---

[2] The Court should also refuse to consider the Unproduced Exhibits on summary judgment because they were improperly included for the first time on reply. "[I]t is improper for the Court to consider the [new] evidence…submitted for the first time in reply, because that evidence was not submitted in response to any **_new_** material issues raised by the defendants in their opposition brief." *U.S. ex rel. Karlin v. Noble Jewelry Holdings Ltd.*, No. 08 CIV. 7826 JGK KNF, 2012 WL 1228199, at *5 (S.D.N.Y. Apr. 9, 2012) (emphasis added).

4

**II.      Paramount Failed to Reach an Agreement with
Touch Stone for Reasons Unrelated to Dr. Fersel**

Even if the Court were to consider the Unproduced Exhibits, they only confirm the key fact that Paramount's attempts to enter into a relationship with Touch Stone broke down prior to Dr. Fersel's independent agreement to rent space from Touch Stone.  (As set forth in detail in Dr. Fersel's prior memoranda of law, even if Paramount had a relationship with Touch Stone, it had no further legitimate interest, as required for a non-competition agreement to be enforceable under *BDO Seidman*, once that relationship irrevocably broke down for reasons having nothing to do with Dr. Fersel.  *BDO Seidman v. Hirshberg*, 93 N.Y.2d 382 (1999).

Exhibit H demonstrates that Paramount's attempt to reach an agreement with Touch Stone due to Paramount's use of certain creams and Touch Stone's fear of an insurance investigation – i.e., reasons having nothing to do with Dr. Fersel.  Exhibit H also shows that their negotiations between Paramount and Touch Stone broke down on December 11, 2017, when Touch Stone's principal did not reply to Dr. Landow's text trying to "firm up a time for tomorrow."  The response from Touch Stone's principal on December 18, 2017 that "[y]ou have to take a break from the office" only confirmed that his failure to respond on December 11, 2017 indicated a break down in negotiations.  This timeline is particularly important because Paramount concedes that Dr. Fersel did not breach the Agreement prior to December 15, 2017 (Dkt. 64 p. 7).  Even that date is unsupported by the evidence.  Paramount's supposed support is Exhibit B to its moving papers (Dkt. 53-2), which consists of an arbitration award for services rendered on December 15, 2017.  Yet, nowhere in that document is there any indication that the services were rendered at space within Touch Stone's office.  In contrast, the arbitration award attached as Exhibit C to Paramount's moving papers (Dkt. 53-3) shows that Dr. Fersel and

5

Touch Stone's principal Dr. DiMaggio treated the same patient, and that Dr. Fersel first treated that patient on January 26, 2018, well after the negotiations between Paramount and Touch Stone broke down.  Exhibit H, therefore, only confirms that the negotiations between Paramount and Touch Stone broke down well before Dr. Fersel entered into his own agreement with Touch Stone.

Exhibit I, meanwhile, demonstrates that during the day that Dr. Landow and Dr. Fersel visited Touch Stone's office to explore a possible relationship, Dr. Fersel was asked to treat some patients, which he did (along with Dr. Landow).  Fersel Sur-Reply Decl. ¶¶ 2-5.  Touch Stone and Paramount intended this to be a trial, which, as evidenced by the text messages in Exhibit H, did not work out because Touch Stone objected to Dr. Landow's use of certain creams.  *Id*., Paramount Reply Ex. H.  There is no evidence in the record (or reality) that Paramount or Touch Stone exchanged any payments in connection with this one-day trial balloon or that it otherwise represented any sort of agreement to work together in any capacity.

## III.    Dr. Fersel Was Not Paid for the Work He Performed

Paramount attached Exhibit K to the Landow Reply Decl. to purportedly show that Dr. Fersel was paid his share of a $297.39 payment to Paramount reflected on a check dated February 22, 2017 as part of his April 10, 2017 paycheck.  Landow Reply Decl. ¶¶ 22-23.  Paramount tries to prove this by claiming that it was included in a March 2017 spreadsheet it received from its attorney.  First, the spreadsheet attached as Exhibit K has no date, so it does not prove anything at all regarding timing.  Second, even if Exhibit K were dated March 2017, all it would prove is that Paramount received the $297.39 payment in March 2017.  Neither Exhibit K nor any other document produced or submitted on summary judgment demonstrates that Paramount ***actually paid Dr. Fersel*** his commission on that $297.39 in his April 2017 paycheck.

6

As set forth in Dr. Fersel's moving and opposition/reply papers, that $297.39 payment was reflected on a chart produced by Paramount ***that Paramount itself claimed*** represented the payments it received for all medical services performed by Dr. Fersel during the term of his Agreement with Paramount and for which Paramount ***did not pay any commission to Dr. Fersel***. *See*, *e.g.*, Rosenberg Moving Decl. ¶ 10, Ex. 20 (Dkt. 46, 46-5). Paramount's own expert included this payment within his calculation of Dr. Fersel's damages (Dkt. 54, 54-1). Paramount has offered no evidence that it paid Dr. Fersel his commission with respect to this payment other than Dr. Landow's vague, self-serving claim that because Paramount's attorney received the payment in the first week of March 2017, "the proceeds from this check ***would have been*** included in Fersel's April 10, 2017 paycheck" (emphasis added) (Dkt. 63 ¶ 23). Neither Dr. Fersel's April 10, 2017 paycheck, or any other evidence demonstrating what was contained within it, are submitted, and Dr. Landow cannot even manage to testify that the commission was, in fact paid, only that it "would have been" paid. The court, therefore, should grant summary judgment to Dr. Fersel with respect to this payment, and, in so doing, find that Paramount breached the Agreement as early as April 10, 2017.

**IV.     None of the Unproduced Exhibits Are Relevant to Dr. Fersel's Claims for Breach of Contract and Labor Law Violations**

Even if the Court were to consider the Unproduced Exhibits and find that they create an issue of fact with respect to Dr. Fersel's claim for a declaratory judgment and/or Paramount's counterclaims, they have no bearing on Dr. Fersel's claims for breach of contract and breach of Article 6 Section 193 of New York's Labor Law arising out of Paramount's failure to pay his wages. For the reasons set forth in Dr. Fersel's moving papers and combined opposition/reply papers, the Court should, at a minimum, grant Dr. Fersel summary judgment with respect to those claims.

## CONCLUSION

For the foregoing reasons, the Court should grant Dr. Fersel's Motion, deny

Paramount's Cross-Motion, and grant such other and further relief as the Court deems just and

proper.

Dated: February 4, 2022
      New York, New York

ROTTENBERG LIPMAN RICH, P.C.


By: _____
      Bertrand Sellier
      C. Zachary Rosenberg
The Helmsley Building
230 Park Avenue, 18th Floor
New York, New York 10169
(212) 661-3080

Attorneys for Plaintiff Jordan Fersel, M.D.

8